**Michael D. McFARLAND,**
**Plaintiff-Appellant,**

v.

**Robert J. CASSADY, et al,**
**Defendants-Appellees.**

No. 84–2788.

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 2, 1985.[*]

Decided Jan. 7, 1986.

Michael D. McFarland, pro se.

Heidi Rib Brent, Asst. Atty. Gen., Phoenix, Ariz., for defendants-appellees.

Before BROWNING, SNEED, and HUG, Circuit Judges.

SNEED, Circuit Judge:

Michael McFarland appeals from the district court's summary judgment in favor of the State of Arizona. We reverse and remand for trial on the issue of good-time credits.

I.

FACTS AND PROCEDURAL
BACKGROUND

On September 9, 1983, McFarland was removed from the general population of the

---

[*] The panel unanimously finds this case suitable for decision without oral argument. Fed.R. App.P. 34(a) and Ninth Circuit Rule 3(f).

Arizona State Prison and placed in investigative lock-up pending inquiry into the allegation that he was involved in extortion and drug dealing. On October 4, 1983, he was sent an Institution Classification Committee (ICC) hearing notice. The hearing was to be conducted by the Administrative Segregation Committee on October 14, 1983, to determine whether to place McFarland in segregation based on information received from Intelligence and Investigations (I & I) that he was a threat to the secure and orderly operations of this unit. The notice specified that he would be permitted to appear at the hearing, call witnesses, remain silent, have an employee of his choice represent and assist him, receive a copy of the written findings of the ICC, and appeal an adverse decision to the Director. The notice further stated: "Item 2 [witnesses] will not be afforded the Inmate during hearings based solely on documented disciplinary committee reports." Clerk's Record (C.R.) at subdivision 15.

At the bottom of the notice, within the spaces provided, McFarland listed the names of three witnesses, none of whom were called or present at his hearing. *Id.* The hearing took place on October 14, 1983. Based upon the I & I report, the committee recommended that appellant be placed in administrative segregation, reclassified to parole class IV, and discontinued from earning 2/1 (two for one) good time credits.[1]

The report of the committee, a one page form, contains a space for the committee to indicate whether the prisoner's requested witnesses were present during the hearing. If none were present, the form requires an explanation. In this space an explanation states, "ask [sic] for lie detector test on him and those who testify against him—I denied." C.R. at subdivision 15. It is not clear from the record why McFarland was denied his witnesses. It is possible, as argued for the first time in the state's brief, that witnesses were denied because "the security needs of the institution ... prevented plaintiff from being able to produce and cross-examine witnesses." Brief for Appellee at 13. Whatever the reason, the hearing report explanation sheds very dim light indeed on the facts.

Appellant received notice on October 18, 1983, that he was reclassified and denied good-time credits. The notice stated that appellant was being placed in Administrative Segregation because he posed a threat to the secure and orderly operation of the institution due to his involvement in drug sales and extortion.

McFarland appealed the reclassification to the Department of Corrections of the State of Arizona several times in 1983 and 1984. All of these appeals were denied.[2] Appellant also filed this action based on 42 U.S.C. § 1983 on May 9, 1984, alleging due process violations by prison officials. Appellant's motion to proceed in forma pauperis was granted but his two requests for appointment of counsel were denied. On November 19, 1984, the district court granted final summary judgment in defendant's favor.

## II.

## DISCUSSION

We review a grant of summary judgment de novo. *Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir.1983). We must determine whether there exists any genuine issue of material fact and must review the district court's application of substantive law. *Amaro v. Continental Can Co.,* 724 F.2d 747, 749 (9th Cir.1984).

Appellant claims that he has a liberty interest in remaining within the general prison population. In *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675

---

1. McFarland is serving one sentence under the old code, Ariz.Rev.Stat.Ann. §§ 31–251 to –252 (pre-1978 changes) and one sentence under the new code, Ariz.Rev.Stat.Ann. §§ 31–251 to –252 (post–1978 changes). His placement in Class IV status deprives him of the opportunity to earn any good-time credits.

2. Appellant also filed a state Petition for Special Action that was denied by the Superior Court of Pinal County, Arizona, on January 31, 1984, because petitioner had not exhausted his administrative remedies.

(1983), the Supreme Court held that the Constitution itself does not give prison inmates that type of liberty interest. *Id.* at 468, 103 S.Ct. at 869. The Court stated, however, that liberty interests protected by the Due Process Clause of the Constitution may be created by state law. *Id.* at 472, 103 S.Ct. at 871 (finding that Pennsylvania had created such rights by the mandatory language used in the correctional statutes).

But here, unlike the Pennsylvania state law in *Helms,* none of the statutes or regulations promulgated by the Arizona legislature or state correctional officials concerning administrative segregation contain the "mandatory language" found to be controlling in *Helms. See* Ariz.Admin.Comp. R5-1-201 to 5-1-607. Therefore we think it unlikely that state law created a liberty interest in remaining within the general prison population. *Cf. Meachum v. Fano,* 427 U.S. 215, 223-25, 96 S.Ct. 2532, 2537-39, 49 L.Ed.2d 451 (1976). Moreover, the appellant was afforded the required "due process" with respect to his placement in administrative segregation. That is, appellant was provided "an informal, nonadversary review of the information supporting [his] administrative confinement, including whatever statement [he] cared to submit, within a reasonable time after confining him to administrative segregation." *Helms,* 459 U.S. at 472, 103 S.Ct. at 871. This contention, therefore, that due process was denied him when he was placed in a segregative unit of the prison, is unsubstantiated.

■ Appellant's claim with respect to good-time credits is well-founded, however. Appellee virtually concedes that Arizona created a liberty interest in the receipt of good-time credits through its use of "mandatory language" in Ariz.Rev.Stat.Ann. §§ 31-251 (1983), 32-252 (1983), & 41-1604.06 (1984); *cf. Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). That concession is proper.

In *Wolff,* the Supreme Court found that the Due Process Clause imposed three requirements that prison officials must meet before the revocation of good-time credits in which the state has created a liberty interest will be immune from constitutional attack. The officials must provide advance "written notice of the claimed violation"; second, they must obtain "a written statement of the factfinders as to the evidence relied upon and the reasons for disciplinary action"; and third, they must insure that the inmate "be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 563-66, 94 S.Ct. at 2978-79. The record here, as already pointed out, is very uninformative about the committee's reasons for denying appellant the opportunity to present witnesses on his behalf.

To give meaning to an inmate's right to call witnesses "unless unduly hazardous," the assessment by prison officials of institutional security must be made in good faith. The committee hearing notice, a form notice, states that inmates will not be allowed witnesses during hearings based "solely on a documented committee report." C.R. at subdivision 15. This record does not reveal the precise meaning of this notice, nor does it reveal why, if it be true, appellant's hearing fell into the "unduly hazardous" category. Moreover, it is doubtful that a blanket denial of witnesses would fulfill the *Wolff* requirements.

The committee report, in itself, also provides no help. It refers only to a request by appellant for a lie detector test and the fact that it was denied. C.R. at subdivision 15. Equally unhelpful are the appellee's moving papers requesting summary judgment. In these the only argument is that appellant has no liberty interest in remaining within the prison population. The state did not address appellant's claim to a liberty interest in good-time credits or whether it would have been unduly hazardous to have allowed the appearance of witnesses. *See* Appellee's Motion to Dismiss and Motion for Summary Judgment, C.R. at subdivision 15. These claims are opposed *for the first time* on appeal. Appellant's amended complaint, C.R. at subdivision 21,

on the other hand, clearly expresses his contention that the committee's denial of witnesses was a violation of his state-created liberty interest in earning good-time credits.

Under these circumstances it was error to grant summary judgment in favor of appellee in light of the omission of evidence or argument concerning appellant's claim that he was denied due process when the committee took away his good-time credits. In the absence of any evidence that the denial of witnesses was due to institutional security, and weighing the evidence in favor of appellant, the district court erred granting summary judgment as to all issues raised by appellant.

Appellant's last claim of error concerns the district court's denial of appointment of counsel. Appellant contends that he could not have properly complied with the court rules on summary judgment because he was not represented by counsel. We need not reach the merits of this claim because we reverse and remand for trial on the issue of good-time credits.

REVERSED AND REMANDED.