783 F.2d 867
 Ethel A. ROBERTS, as Personal Representative of the Estate
of Arthur N. Roberts, deceased,
Plaintiff-Appellant/Cross-Appellee.
v.
James SPALDING, as Superintendent of the Washington State
Penitentiary, W. Edward Naugler, as Washington State
Department of Institutions Medical Director, Barbara
Anderson, as Health Care Manager, Washington State
Penitentiary, and Joyce Lingerfelt, Nurse Practitioner,
State of Washington, Defendants-Appellees/Cross-Appellants.
 Nos. 84-3752, 84-3825.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 4, 1985.
Decided Feb. 24, 1986.
 
 1
 Richard I. Sampson, Richard I. Sampson & Associates, Seattle, Wash., John S. Biggs, Walla Walla, Wash., for plaintiff-appellant/cross-appellee.
 
 
 2
 Don G. Daniel, Asst. Atty. Gen., Olympia, Wash., for defendants-appellees/cross-appellants.
 
 
 3
 Appeal from the United States District Court for the Western District of Washington.
 
 
 4
 Before EUGENE A. WRIGHT and KENNEDY, Circuit Judges, and MACBRIDE,* District Judge.
 
 MACBRIDE, Senior District Judge:
 
 5
 The underlying action was brought under 42 U.S.C. Sec. 1983 alleging that the medical care accorded appellant's decedent, an inmate at the Washington State Penitentiary, violated his eighth amendment rights, denied him equal protection of the laws, and denied him a state-created liberty interest without due process of law. This appeal principally challenges the district court's refusal to instruct the jury on appellant's due process and equal protection theories. On cross-appeal, appellees seek reversal of the district court's denial of their request for attorney's fees.
 
 I. FACTS
 
 6
 The decedent, Arthur Roberts, was a thirty-five year old, slightly retarded inmate at the Washington State Penitentiary ("WSP") when he died of heart failure on December 21, 1979.
 
 
 7
 This appeal pertains to events that took place in the WSP infirmary from December 10 through 21, 1979. In effect during this time was a section of the Washington Administrative Code that stated:
 
 
 8
 Any inmate may, at his or her own expense, obtain medical or dental care additional to that mandated by the provisions of this chapter: Provided, That a doctor or dentist in the department's employ certifies that the proposal for supplemental treatment comports with sound medical or dental practice. The time and place of the performance of the supplemental care are subject to the convenience of the prison's custody staff.
 
 
 9
 Wash.Admin.Code R. 275-91-070 (1977). On December 10, 1979, Roberts reported to the WSP infirmary complaining of chest pains. He was examined by a registered nurse, Ronald Petrie, who performed tests and concluded that Roberts had no cardiac illness. Roberts stated that he wished "to go downtown for a check-up." The request was noted on the decedent's records, but was not referred to any doctor for consideration. Later that day, Roberts was treated by a nurse practitioner, Joyce Lingerfelt. Lingerfelt saw the notation regarding Roberts' request to "go downtown," but she took no action.
 
 
 10
 On December 11, 1979, Roberts was attended by Doctor Kuzma, an outside physician who did part-time contract work at WSP. Dr. Kuzma concluded on the basis of Roberts' complaints and test results that his pains were not of cardiac origin.
 
 
 11
 On December 18th, 19th, and 20th, Roberts again complained of chest pains. On December 20, 1979, he was again attended by Nurse Practitioner Lingerfelt, to whom he apparently repeated his request to "go downtown." She explained that he had been seen by a "downtown" physician, Dr. Kuzma. On December 21, 1979, Roberts was found dead in his cell. An autopsy determined the cause of death to be a completely blocked artery [coronary arterial thrombosis].
 
 II. PROCEDURAL HISTORY
 
 12
 Trial was had in the district court before Judge Tanner. At trial, appellant sought to advance three distinct bases for recovery: (1) that the medical care accorded the decedent violated his eighth amendment right to be free from cruel and unusual punishment, (2) that WSP's use of unsupervised nurse practitioners to provide medical care to the decedent, a practice arguably unauthorized by then-existing regulations, denied the decedent equal protection of the laws, and (3) that appellees' failure to process the decedent's request for supplemental health care denied him a state-created liberty interest without due process of law.
 
 
 13
 After a three-day trial, the court charged the jury on appellant's eighth amendment theory only. The court refused, over appellant's objections, to instruct the jury on the other theories advanced by appellant. So instructed, the jury returned a verdict in favor of all appellees. Appellees then requested attorney's fees, claiming that the litigation was frivolous. That request was denied. Both parties appeal. We have jurisdiction over these appeals pursuant to 28 U.S.C. Sec. 1291.
 
 III. STANDARD OF REVIEW
 
 14
 We review the sufficiency of the jury instructions to determine whether, viewed as a whole, the jury was adequately instructed on each element of the case. See Ragsdell v. Southern Pacific Transportation Co., 688 F.2d 1281, 1282 (9th Cir.1982). A party is entitled to have her theories presented to the jury, so long as they are both legally correct and supported by the evidence. Los Angeles Memorial Coliseum Commission v. National Football League, 726 F.2d 1381, 1398 (9th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984).
 
 IV. DUE PROCESS
 
 15
 A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution. See Estelle v. Gamble, 429 U.S. 97, 103-04, 97 S.Ct. 285, 290-91, 50 L.Ed.2d 251 (1976) (prisoners have right to adequate medical care; deliberate indifference by the prison staff to the serious medical needs of inmates constitutes cruel and unusual punishment in violation of the eighth amendment); accord Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir.1982), on appeal after remand, Hoptowit v. Spellman, 753 F.2d 779 (9th Cir.1985). Nonetheless, appellant claims that Wash.Admin.Code R. 275-91-070 (1977) vested the decedent with a "liberty interest" protected by the fourteenth amendment to the United States Constitution, and that by violating the regulation appellees deprived the decedent of his liberty interest without due process of law. Appellant's action is bottomed on 42 U.S.C. Sec. 1983, which provides a federal cause of action against persons who, acting under color of state law, custom or usage, deprive a person of rights secured by the federal constitution and laws. The fourteenth amendment to the federal constitution provides that no state shall deprive a citizen of "life, liberty, or property" without due process of law. Appellant argues that, given the state of the evidence, the court's failure to instruct the jury on her due process claim was in error.
 
 
 16
 State law can create a protected "liberty" interest by placing substantive limitations on the exercise of official discretion. Olim v. Wakinekona, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983); Hewitt v. Helms, 459 U.S. 460, 470-71, 103 S.Ct. 864, 870-71, 74 L.Ed.2d 675 (1983); McFarland v. Cassady, 779 F.2d 1426, 1428 (9th Cir.1986); Baumann v. Arizona Department of Corrections, 754 F.2d 841, 844 (9th Cir.1985). For a liberty interest to be created in a state administrative regulation, the regulation must contain " 'particularized standards or criteria [that] guide the State's decisionmakers.' " Olim, 461 U.S. at 249, 103 S.Ct. at 1747 (citation omitted); Baumann, 754 F.2d at 844. If, however, "the decisionmaker is not 'required to base its decisions on objective and defined criteria,' " but may instead " 'deny the requested relief for any constitutionally permissible reason or for no reason at all,' the State has not created a constitutionally protected liberty interest." Olim, 461 U.S. at 249, 103 S.Ct. at 1747 (citations omitted).
 
 
 17
 The state's use of guidelines to "structure the exercise" of the decisionmaker's discretion does not necessarily create a protected interest. Baumann v. Arizona Department of Corrections, 754 F.2d 841, 844 (9th Cir.1985). Thus, the fact that a regulation imposes a residuum of restraint on the otherwise "unfettered," see Olim, 461 U.S. at 250, 103 S.Ct. at 1748, discretion of a decisionmaker is not determinative of whether a protected interest has been created. Id. This position accords with our belief in the correctness of extending expanded procedural guarantees to incarcerated individuals, for as the Supreme Court has stated:
 
 
 18
 The creation of procedural guidelines to channel the decision-making of prison officials is, in the view of many experts in the field, a salutary development. It would be ironic to hold that when a State embarks on such desirable experimentation it thereby opens the door to scrutiny by the federal courts, while States that choose not to adopt such procedural provisions entirely avoid the strictures of the Due Process Clause.
 
 
 19
 Hewitt v. Helms, 459 U.S. 460, 471, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983).
 
 
 20
 "A mere expectation of receiving a benefit is not enough to create a protected interest." Spruytte v. Walters, 753 F.2d 498, 506 (6th Cir.1985), cert. denied, U.S. ----, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986). To claim a protected interest in a benefit, "[one] must 'have a legitimate claim of entitlement to it.' " Id. at 506-507 (quoting Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).
 
 
 21
 In Wright v. Enomoto, 462 F.Supp. 397 (N.D.Cal.1976) (3 judge court), summarily aff'd, 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978), a protected liberty interest was found when an administrative regulation conditioned inmate segregation on a decisionmaker's "reasonabl[e] belie[f] that [the inmates] are a menace to themselves and others or a threat to the security of the institution." Id. at 403.[1] The protectable interest that the court found was "in not being confined in maximum security segregation unless [the inmate] is found, for clearly documented reasons, to come within the standard set by the rules." Id. (emphasis added).
 
 
 22
 Similarly, in Spruytte v. Walters, 753 F.2d 498 (6th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986), the court found that a protectable interest was created by a regulation that conditioned the denial of mailed books and periodicals to inmates upon a finding that the publication "present[s] a threat to the order or security of the institution or to resident rehabilitation." Id. at 505. In Spruytte, due process was implicated because a decisionmaker's finding that an individual book presented a threat to security was a "specific, substantive predicate" to withholding of the book from the prisoner. Id. at 508.
 
 
 23
 In contrast to the regulations in Spruytte and Wright v. Enomoto, Wash.Admin.Code R. 275-91-070 provides that an inmate "may" obtain supplemental medical care, "[p]rovided, [t]hat" a doctor certifies that the inmate's request for supplemental care "comports with sound medical ... practice." The words "may" and "provided," considered in the context of the regulation, indicate that the regulation does not create a "right or justifiable expectation" that can be denied only upon the application of defined and objective criteria. Vitek v. Jones, 445 U.S. 480, 489, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980). Rather than conditioning denial of supplemental care upon a negative finding made in the exercise of the doctor's professional medical judgment, see Spruytte, 753 F.2d at 508, the regulation creates in the inmate only a "hope" that supplemental care will be provided should a doctor determine that it is warranted. See Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 11, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668 (1979).
 
 
 24
 That the state holds out this possibility of outside medical care does not mean that a liberty interest has been created. See id. The doctor's discretion to determine that supplemental medical care is not warranted remains essentially unfettered. He or she need not articulate a "specific, substantive predicate" to the denial of supplemental care. In fact, the regulation requires that a doctor certify the inmate's proposal for supplemental care as consistent with sound medical practice before the inmate can be granted the requested care. As such, the regulation creates no protected entitlement or liberty interest and the 14th amendment is not implicated. Compare McFarland, 779 F.2d at 1428 (none of the Arizona statutes and regulations concerning administrative segregation contain mandatory language sufficient to create liberty interest in remaining in general prison population) with id. (use of mandatory language creates liberty interest in the receipt of good-time credits). See also Baumann, 754 F.2d at 844. Accordingly, it was not error for the district court to refuse to instruct the jury on appellant's due process theory.[2]
 
 V. EQUAL PROTECTION
 
 25
 Appellant rather weakly suggests that the system of medical care and medical care access articulated in Wash.Admin.Code Regulations 275-91-011, 275-91-050, & 275-91-070 (1977) violated the decedent's right to equal protection of the laws guaranteed by the fourteenth amendment to the United States Constitution. See U.S. Const. amend. XIV, Sec. 1. The system of medical care provided by the regulations violates equal protection only if it bears no rational relationship to a legitimate state interest. See Dandridge v. Williams, 397 U.S. 471, 485-86, 90 S.Ct. 1153, 1161-62, 25 L.Ed.2d 491 (1970); Baumann v. Arizona Department of Corrections, 754 F.2d 841, 846 (9th Cir.1985).
 
 
 26
 Appellant suggests no basis for a finding that the policies expressed in the regulations, or the regulations themselves, are deficient constitutionally. The regulations appear to be reasonably related to the provision of adequate medical care to prison inmates consistent with the legitimate security and financial needs of the institution. Accordingly, we reject appellant's contention that the district court's refusal to instruct the jury on her equal protection theory was in error.
 
 VI. CRUEL AND UNUSUAL PUNISHMENT
 
 27
 Appellant argues that since the decedent, Mr. Roberts, was a member of the class in Hoptowit v. Ray, 682 F.2d 1237 (9th Cir.1982), on appeal after remand, Hoptowit v. Spellman, 753 F.2d 779 (9th Cir.1985), in which it was determined that the conditions and access to medical care at WSP were "cruel and unusual" in violation of the eighth amendment, she was entitled to a directed verdict on liability with regard to at least some appellees on her eighth amendment claim. While admission of that adjudication and the affirmed factual findings may have been appropriate at trial to prove bad conditions, established practice, or notice of constitutionally substandard conditions to prison officials, see Plaintiff's Trial Memorandum, Excerpt of Record (E.R.) tab Y, at 271-72, the Hoptowit decision does not in itself compel the conclusion that the care afforded Roberts was constitutionally deficient. Care may be variable; some prisoners may receive no care while others may be accorded competent or even superlative care. The fact that a prison infirmary is systematically substandard does not logically preclude instances of constitutionally sufficient care.
 
 
 28
 The jury was instructed that, in order to sustain her eighth amendment claim, appellant had to prove that WSP's alleged denial of access to adequate medical care was the result of deliberate indifference to the decedent's serious medical needs. The standard articulated by the district court is the proper standard to be applied in eighth amendment analysis. Estelle v. Gamble, 429 U.S. 97, 104, 105-06, 97 S.Ct. 285, 291, 291-92, 50 L.Ed.2d 251 (1976); Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir.1982), on appeal after remand, Hoptowit v. Spellman, 753 F.2d 779 (9th Cir.1985); see also, e.g., Haygood v. Younger, 769 F.2d 1350, 1354-55 (9th Cir.1985) (en banc) (detention beyond termination of prisoner's sentence held cruel and unusual), petition for cert. filed, 54 U.S.L.W. 3489 (U.S. Jan. 21, 1986) (No. 85-908). Accordingly, we uphold the district court's instructions with regard to appellant's eighth amendment claim.
 
 VII. APPELLANT'S OTHER CLAIMS
 
 29
 Appellant objects to the district court's failure to charge the jury with certain instructions or parts of instructions proposed by appellant. See Brief of Appellant at 6-9. As previously indicated in Section III, supra, we review the instructions given by the court to determine whether, viewed as a whole, they adequately instructed the jury on each element of the case. A party is not entitled to have her theories presented to the jury unless they are both legally correct and supported by the evidence. Even then,
 
 
 30
 A court is not required to use the exact words proposed by a party, incorporate every proposition of law suggested by counsel or amplify an instruction if the instructions as given allowed the jury to determine intelligently the issues presented.
 
 
 31
 Los Angeles Memorial Coliseum Commission v. National Football League, 726 F.2d 1381, 1398 (9th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984). Thus, the district court was under no duty to submit to the jury proposed instructions that contain either a misstatement of the law or a theory not supported by the evidence, or that are otherwise incomplete or improper.
 
 
 32
 Appellant's proposed instructions 5, 9, and 10 contain improper, incorrect, or incomplete theories of law under the fifth, the eighth, and the fourteenth amendments. Proposed instruction 5 fails to set forth the proper standard of deliberate indifference to be applied to her eighth amendment claim. See Estelle v. Gamble, 429 U.S. 97, 103-04, 97 S.Ct. 285, 290-91, 50 L.Ed.2d 251 (1976). Proposed instruction 9 also fails to set forth the appropriate deliberate indifference standard for appellant's eighth amendment claim. Further, the proposed instruction contains references to appellant's due process and equal protection theories, which were unsupported by the evidence. See supra Sections IV & V. Proposed instruction 10 is misleading because it indicates that willfulness or intent is not a required element of appellant's eighth amendment claim. See Estelle v. Gamble, 429 U.S. at 105-06, 97 S.Ct. at 291-92; Haygood v. Younger, 769 F.2d at 1354-55. Accordingly, the instructions were properly rejected by the district court.
 
 
 33
 Appellant's proposed instruction 11 is improper since it directs the jury to find that "all acts done by all defendants towards Arthur N. Roberts were done under color of state law." This was a question of fact for the jury to decide. Appellant's proposed instruction 11-A was properly rejected, since the court instructed the jury concerning acts under color of state law. See Reporter's Transcript of Proceedings, Vol. IV, at 4-5.
 
 
 34
 Appellant's proposed instruction 12 purports to summarize Wash.Admin.Code R. 275-91-070 (1977). This instruction was unnecessary, since the regulation was introduced as plaintiff's exhibit 84. E.R. at 776. Furthermore, the proposed instruction directs the jury to find that the regulation entitled the decedent to have his request for supplemental care processed to a decision by a doctor. This contention was factually disputed at trial, and to the extent that it relates to appellant's due process theory of liability, was properly rejected by the district court.
 
 
 35
 For similar reasons we uphold the district court's rejection of appellant's proposed instruction 13, which summarizes Wash.Admin.Code R. 275-91-050 (1977). The instruction was unnecessary since the regulation was introduced along with Wash.Admin.Code R. 275-91-070, supra, as plaintiff's exhibit 84. Furthermore, the proposed instruction directs the jury to conclusions regarding factual matters that were the subject of dispute at trial.
 
 
 36
 The district court properly rejected appellant's proposed instructions 14, 14-A, and 14-B, since the instructions direct the jury to find for the appellant on her due process and eighth amendment claims. Finally, we reject as irrelevant appellant's objection to the court's refusal to charge the jury with appellant's proposed instruction 22, which pertains to the awarding of nominal damages.VIII. ATTORNEY'S FEES
 
 
 37
 Appellees, the defendants below, cross-appeal the district court's denial of their motion for award of attorney's fees. Pursuant to 42 U.S.C. Sec. 1988, defendants prevailing in civil rights actions are to be awarded attorney's fees " 'not routinely, not simply because [they] succeed, but only where the action brought is found to be unreasonable, frivolous, meritless or vexatious.' " Mayer v. Wedgewood Neighborhood Coalition, 707 F.2d 1020, 1021 (9th Cir.1983) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978) (Title VII case)).
 
 
 38
 In its order denying appellees' motion, the district court found that "Plaintiff's [eighth amendment] cause of action was not unreasonable, frivolous, or vexatious but was of sufficient merit to proceed to the jury." E.R. tab PP, at 527. The district court's finding is well-supported by the evidence, and will not be disturbed. Thus, we uphold the district court's denial of attorney's fees to appellees.
 
 
 39
 Accordingly, the judgment and order of the district court are AFFIRMED.
 
 
 
 *
 Honorable Thomas J. MacBride, Senior United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 The regulation provided in pertinent part:
 Inmates must be segregated from others when it is reasonably believed that they are a menace to themselves and others or a threat to the security of the institution. Inmates may be segregated for medical, psychiatric, disciplinary, or administrative reasons. The reason for ordering segregated housing must be clearly documented by the official ordering the action at the time the action is taken.
 Wright v. Enomoto, 462 F.Supp. at 403.
 
 
 [2]
 We also reject appellant's contention that a "liberty" interest was created by Wash.Admin.Code Regulations 275-91-011 (1977) & 275-91-050 (1977). Appellant makes no showing that these regulations created in the decedent a " 'right or justifiable expectation' rooted in state law," Garcia v. De Batista, 642 F.2d 11, 14 (1st Cir.1981) (quoting Vitek v. Jones, 445 U.S. 480, 489, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980)), and we do not so find