**PEDRO BENNETT, JR., 94040-131, Plaintiff**

v.

**GOVERNMENT OF THE VIRGIN ISLANDS, EDWIN POTTER,** Director of Virgin Islands Bureau of Corrections, **RICHARD SCHRADER,** Warden of the Golden Grove Correctional Facility, **ISADRO BELL,** Warden of the Golden Grove Correctional Facility, **ST. CROIX HOSPITAL, ONE UNNAMED DOCTOR OF ST. CROIX HOSPITAL, ONE UNNAMED DOCTOR,** Chief Medical Officer at Golden Grove, Defendants

Civil Action No. 86/137

District Court of the Virgin Islands

Div. of St. Croix

April 24, 1990

PEDRO BENNETT, JR., Petersburg, VA, *plaintiff pro se*

GODFREY R. DE CASTRO, Attorney General, by VANNIE TAYLOR III, Assistant Attorney General (Department of Justice), St. Croix, V.I., *for defendants*

BROTMAN, *District Judge*

Presently before the court are plaintiff's motion and defendants' cross-motion for summary judgment in this action instituted by a prisoner alleging that defendants failed to provide adequate medical treatment.

165

# I. FACTS AND PROCEDURE

On September 10, 1985, Pedro Bennett, plaintiff, was stabbed by a fellow inmate at the federal penitentiary in Lewisburg, Pennsylvania. As a result of his injuries he was hospitalized and received supervised medical treatment. Plaintiff's Petition for Writ of Habeas Corpus, Docket No. 87-86, at paragraph 6. The following month, plaintiff was transferred to the Golden Grove Correctional Facility in the Virgin Islands. Complaint at 5–6.

While on St. Croix, plaintiff requested further medical treatment for the previously received stab wounds. Complaint at 6. On October 15, 1985, Dr. Diaz, the correction facility physician, performed a blood test and urinalysis. Golden Grove's Medical Records. The following day, after further examination, Golden Grove's Medical Records, Dr. Diaz determined that plaintiff should be taken to St. Croix Community Hospital's surgical clinic for evaluation. Complaint at 6.

On October 24, 1985, plaintiff was taken to the Community Hospital. However, the surgeon to whom plaintiff was referred refused to treat him without his medical records, Complaint at 6, absent an emergency. Golden Groves Medical Records. That same day Dr. Diaz wrote to Richard Schrader, the warden at Golden Grove, requesting that he obtain the plaintiff's medical records from the mainland. Golden Grove's Medical Records. On November 14, 1985, Dr. Diaz noted that the medical records had not yet arrived. Golden Grove Medical Records. The crux of plaintiff's claim is that defendants never attempted to secure the records. Apparently, there was no documentation in the plaintiff's records in Lewisburg confirming the document request. Inmate Request to Staff Member form (Lewisburg) dated May 22, 1989.

Plaintiff continued to receive medical care from Dr. Diaz at the prison. Dr. Diaz' records reflect the fact that the plaintiff received prescriptions for medication from Dr. Diaz on October 29, November 5, and November 14. Golden Grove's Medical Records. Furthermore, plaintiff was taken back to the Community Hospital on November 25, 1985, at which time the surgeon advised plaintiff to continue taking medication. Affidavit of Edwin Figuero, corrections officer responsible for transporting prisoners to health care facilities, dated July 10, 1987, at paragraphs 4 and 8.[1]

---

[1] The prison log sheet indicates that plaintiff was taken to the Community Hospital a third time on December 2, 1985.

The plaintiff was transferred back to the penitentiary in Lewisburg, Pennsylvania on December 11, 1985. Prison Log Sheet.

On or about June 3, 1986, plaintiff filed a complaint against the government of the Virgin Islands, Edwin Potter, the Director of the Bureau of Corrections of the Virgin Islands, and various employees of the Golden Grove Correctional Facility. The complaint named defendants in both their individual and official capacities, and alleged that defendants violated the Virgin Islands Tort Claims Act, V.I. Code Ann. tit. 33, section 3401 et seq., the Health Provider Malpractice Act, V.I. Code Ann. tit. 27, section 166 et seq., and 42 U.S.C. section 1983,[2] by failing to attend to plaintiff's medical needs.

On February 1, 1988, plaintiff moved for summary judgment. In response, defendants filed a cross-motion for summary judgment and, in the alternative, to dismiss the complaint. In an order dated April 19, 1988, the Honorable David V. O'Brien, Chief Judge of the District Court of the Virgin Islands, dismissed plaintiff's local claims inasmuch as plaintiff failed to comply with the Health Provider Malpractice Act, V.I. Code Ann. tit. 27, section 166i(b), requiring the complaint to be filed with the Virgin Islands Medical Malpractice Action Review Committee before instituting suit. Chief Judge O'Brien denied summary judgment with respect to plaintiff's constitutional claim under 42 U.S.C. section 1983.[3]

Plaintiff now renews his motion for summary judgment and the defendants likewise renew their cross-motion for summary judgment.

## II. DISCUSSION

■ It has long been recognized that the eighth amendment's prohibition against "cruel and unusual" punishment is not limited to torture and physically barbarous punishments. E.g., Weems v. United States, 217 U.S. 349 (1910). Rather, "[t]he Amendment embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency. . . .' Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting, Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). Thus, the government has a duty to attend to the medical needs of prisoners as they have no alternative means of ascertaining care. Estelle at 103.

---

[2] Plaintiff's complaint, which is construed liberally as a result of his pro se status, implies a claim under 42 U.S.C. section 1983.

[3] Pursuant to an order dated April 20, 1989 this case was transferred to the Honorable Stanley S. Brotman because of docket congestion in the Virgin Islands.

■ In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court set forth a two-prong test to determine whether a prisoner's eighth amendment rights have been contravened by the government's failure to provide adequate medical care. First, the prison officials must be deliberately indifferent to the prisoner's medical needs. Id. at 104–05. Second, the prisoner's medical needs must be serious. Id. at 104.

■ Deliberate indifference is generally manifested in one or more of the following ways: (1) a prison physician's response to the prisoner's medical needs; (2) prison officials intentionally refusing or delaying access to care; or (3) prison officials intentionally interfering with prescribed treatment.[4] Id. at 104. After careful review of the three general scenarios that give rise to violations of the first prong of the Estelle test and the present uncontroverted facts, this court is unable to conclude that plaintiff's constitutional rights were violated.

In the instant case, Dr. Diaz first examined plaintiff on October 15, 1985. He took both blood and urine samples. The following day he checked plaintiff's blood pressure, pulse, heart, lungs, abdomen and scars from the knife wounds. Upon completion of the examination he determined that the prisoner should be examined by a surgeon. Dr. Diaz prescribed various medications, including pain killers, on October 29, November 5, November 14, and November 19, 1985. Furthermore, he recommended an eye exam which was subsequently performed. Plaintiff received medical attention on at least seven occasions during his two month stay at Golden Grove. Cf. White, slip op. (motion to dismiss denied where doctor: (1) refused to give prisoner Maalox while taking Tolectin, a drug with substantial risk of peptic ulcer; (2) refused to examine potentially cancerous skin blemishes; (3) refused to hospitalize heart attack victim; and (4) responded to complaints of numbness by lighting fire to a match book and holding it to the prisoner's hands). Plaintiff is unable to show the first manifestation of deliberate indifference.

As to the second general manifestation of deliberate indifference, the record is void of any indicia, controverted or otherwise, tending

---

[4] Although not applicable to this case, deliberate indifference may also be shown by a prison physician's refusal to follow the directives of previous physicians. White v. Napoleon, — F.2d —, No. 89-5523 (3d Cir. Feb. 23, 1990) (LEXIS, Genfed library, U.S. App. file).

to show that plaintiff was prevented from seeking medical care at the prison. Indeed, it is uncontroverted that plaintiff received medical treatment at the prison at least seven times during his two month stay at Golden Grove.

Finally, the third general manifestation of deliberate indifference must be considered. As a basic premise, a prisoner has no independent constitutional right to medical care outside of prison. Roberts v. Spalding, 783 F.2d 867 (9th Cir. 1986), cert. denied, 479 U.S. 930 (1986). Where medical personnel within an institution prescribe treatment, including consultations with outside specialists, however, failure to abide on the part of prison officials may indicate deliberate indifference towards the prisoner's needs. See, West v. Kiev, 571 F.2d 158 (3d Cir. 1978) (complaint met deliberate indifference test where surgery for severe varicose veins was recommended in 1974, plaintiff filed suit in February, 1976, and surgery was performed in March of 1976, 17 months after the initial recommendation); Freeman v. Lockhart, 503 F.2d 1016 (8th Cir. 1974) (plaintiff who made repeated attempts to follow-up on optometrist's suggestion of surgery but was denied access to a physician had valid cause of action); Sawyer v. Sigler, 320 F. Supp. 690 (D. Neb. 1970), aff'd, 445 F.2d 818 (8th Cir. 1971) (three consolidated cases) (treatment of emphysema adequate as it was in accord with prison doctor's recommended treatment; prison official's overruling recommendation of doctor that medication be administered in uncrushed form violated eighth amendment; failure to provide recommended treatment at an outside facility for cancer victim constituted inadequate medical treatment).

In the instant case, Dr. Diaz, the prison physician, recommended that plaintiff be taken to a surgical clinic at the Community Hospital. While the prison officials did in fact comply with the doctor's request, the surgeon refused to treat plaintiff without his medical records. Significantly however, plaintiff did see the surgeon on at least one additional occasion. Thus, Dr. Diaz' directive for outside consultation was carried out regardless of the absence of plaintiff's medical records. During the second visit to the surgeon, the surgeon recommended that plaintiff continue with Dr. Diaz' treatment.

Defendants' compliance with the prison physician's recommendation, coupled with plaintiff's care at the prison, leads to the conclusion that defendants' actions pass constitutional muster, despite plaintiff's dissatisfaction with his treatment. Plaintiff may have wanted more affirmative action from the surgeon. Instead, what he

received was at least one examination and a recommendation to continue on Dr. Diaz' prescribed medication. Thus, plaintiff was not denied from receiving precisely what Dr. Diaz ordered, a consultation. Consequently, plaintiff has failed to fulfill the first prong of the Estelle test requiring deliberate indifference to the prisoners medical needs. Therefore, defendants are entitled to summary judgment as to plaintiff's civil rights claim, 42 U.S.C. section 1983.

## III. CONCLUSION

■ Defendants' motion for summary judgment as to the plaintiff's civil rights claim under 42 U.S.C. section 1983 must be granted inasmuch as there are no facts, disputed or otherwise, showing that defendants were deliberately indifferent to plaintiff's medical needs. An appropriate order will be entered.

## ORDER

This matter having come before the court on the renewed motion of plaintiff for summary judgment and defendants' renewed cross-motion for summary judgment; and

The court having considered the submissions of the parties; and

For the reasons set forth in the court's opinion of this date;

IT IS on this 24th day of April, 1990 hereby

ORDERED that plaintiff's motion for summary judgment is DENIED, and defendants' cross-motion for summary judgment as to plaintiff's claims under 42 U.S.C. 1983 is GRANTED, and the complaint is DISMISSED.