Nicki Arron BONNER, Plaintiff–Appellant,

v.

Mr. LEWIS, Director at ADOC; CPO Crowley; CPO Vega, Defendants–Appellees.

No. 87–2663.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 11, 1988.

Decided Sept. 13, 1988.

---

Marc P. Charmatz and Sarah S. Geer, Washington, D.C., Joseph E. Abodeely, Phoenix, Ariz., Sy DuBow and E. Elaine Gardner, Washington, D.C., for plaintiff-appellant.

Lynne W. Abney, Phoenix, Ariz., for defendants-appellees.

Before FARRIS, WIGGINS and TROTT, Circuit Judges.

FARRIS, Circuit Judge:

Nicki Arron Bonner is an inmate at the Arizona State Prison. He is deaf, mute, and suffers from a severe progressive vision loss which results in increasingly narrow tunnel vision. He has difficulty communicating with people who do not know American Sign Language. None of the personnel at the prison know sign language. Bonner has had several counseling sessions and administrative or disciplinary hearings while in prison. He has seen the prison psychologist. He has also received medical treatment, diagnosis, and medicine. In all of these contacts, he has been without the aid of a qualified interpreter.

Bonner claims that his inability to effectively communicate without a qualified interpreter severely inhibited his ability to participate in or benefit from these programs, hearings, or activities. He further alleges that he has made requests to prison officials for the services of a qualified interpreter "a thousand times" without results. Instead, prison authorities attempt to communicate with Bonner primarily through the use of a telecommunication

device for the deaf. They also have designated prison inmates to serve as sign language interpreters.

The telecommunication device is designed to help deaf individuals communicate over the telephone. It is not designed for face to face communication where it acts basically as a typewriter. Bonner has a fourth grade reading ability. He alleges that because his reading and writing skills are poor, he is unable to communicate adequately through use of the telecommunication device.

Prison officials allege that Bonner requested the use of inmate interpreters. Bonner maintains that the inmate interpreters were forced upon him by prison officials against his wishes. It is not disputed that the inmate interpreters are not skilled in American Sign or trained in language interpretation. In addition, the use of inmate interpreters raises serious confidentiality concerns. Bonner claims that at least one of these inmates leaked information to the general prison population which could threaten his safety.

Prison officials recognize the imperfection of the methods utilized to communicate with Bonner, but contend that nothing more is constitutionally or statutorily required. Bonner disagrees. He filed suit *pro se* alleging that the failure of prison officials to provide him with a qualified interpreter constitutes a violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. He also alleges violations of his constitutional rights to due process, equal protection, and the eighth amendment's prohibition against cruel and unusual punishment. Bonner seeks injunctive relief and damages.

On December 12, 1986, the district court dismissed Samuel Lewis, Director of the Arizona Department of Corrections as a defendant. On August 12, 1986, the district court granted summary judgment in favor of the remaining prison officials. Bonner appeals both orders.

## I.

### STANDARD OF REVIEW

A grant of summary judgment is reviewed *de novo*. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986). The appellate court's review is governed by the same standard as that used by the trial court under Fed.R.Civ.P. 6(c). *Darring,* 783 F.2d at 876. Viewing the evidence in the light most favorable to the nonmoving party, the court must determine whether there are any genuine issues of material fact, and whether the district court applied the relevant substantive law correctly. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986).

## II.

### Section 504 of the Rehabilitation Act of 1973

In evaluating the district court's grant of summary judgment on the claim under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, we consider: 1) whether section 504 was intended by Congress to encompass the provision of sign language interpreters for deaf inmates in state correctional facilities; and, if so, 2) whether there are any genuine issues of material fact which prevent summary judgment.

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, states, in pertinent part:

No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...

29 U.S.C. § 794. The Supreme Court has held that section 504 guarantees "meaningful access" to programs or activities receiving federal financial assistance for otherwise qualified handicapped individuals. *Alexander v. Choate,* 469 U.S. 287, 301, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985). "[T]o assure meaningful access, reasonable accommodations in the ... program or benefit [receiving federal financial assistance] may have to be made." *Id.*

The applicability of section 504 to the provision of qualified sign language inter-

preters for deaf inmates in state correctional programs which receive federal financial assistance has not been tested specifically in the courts. However, under section 504, both the Seventh and Fifth Circuits have ordered the provision of sign language interpreters for deaf students who were otherwise qualified participants in programs receiving federal financial assistance. *Jones v. Illinois Department of Rehabilitation Services*, 689 F.2d 724 (7th Cir.1982) (Illinois Department of Rehabilitative Services had responsibility under section 504 for providing interpreter services to deaf college student at state university); *University of Camenisch v. Texas*, 616 F.2d 127 (5th Cir.1980) (district court properly granted preliminary injunctive relief ordering state university to procure and compensate a qualified interpreter to assist plaintiff, a deaf graduate student, in classes during school term), *vacated and remanded on other grounds*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *see also Barnes v. Converse College*, 436 F.Supp. 635 (D.S.C.1977) (in motion for preliminary injunction, plaintiff who was otherwise qualified deaf college student, had probable right under section 504 to financial assistance for auxiliary aids such as interpreter); *Crawford v. University of North Carolina*, 440 F.Supp. 1047 (M.D.N.C.1977) (in motion for preliminary injunction, deaf graduate student had probable right under section 504 to auxiliary aids such as interpreter provided by the university).

Furthermore, the United States Department of Justice has promulgated regulations under section 504 which apply to correctional facilities receiving federal financial assistance. The regulations require those facilities to "... provide appropriate auxiliary aids to qualified handicapped persons with impaired sensory, manual, or speaking skills where refusal to make such provision would discriminatorily impair or exclude the participation of such persons.... Such auxiliary aids may include brailled and taped materials, *qualified interpreters*, readers and telephonic devices." 28 C.F.R. § 42.503(f) (emphasis added). The Supreme Court has repeatedly emphasized that federal regulations are "an im-portant source of guidance on the meaning of § 504." *School Board of Nassau County v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 1127, 94 L.Ed.2d 307 (1987) (quoting *Alexander v. Choate*, 469 U.S. 287, 304 n. 24, 105 S.Ct. 712, 722 n. 24, 83 L.Ed.2d 661 (1985)); *see also Consolidated Rail Corporation v. Darrone*, 465 U.S. 624, 634 & nn.14–16, 104 S.Ct. 1248, 1254–55 & nn. 14–16, 79 L.Ed.2d 568 (1984).

Prison officials argue that it is unlikely that Congress ever intended that section 504 apply to prisoners. They argue that the legislative history emphasizes that the Act's purpose is to foster vocational rehabilitation and independent living, and that "inmates are hardly in need of help to live independently within their prisons."

■ First, as Bonner points out, the plain language of the Justice Department's implementing regulations, 28 C.F.R. § 42.503, and the Act itself, which states that it applies to "*any* program or activity receiving Federal financial assistance," 29 U.S.C. § 794 (emphasis added), belies their argument. Second, the Act's goals of independent living and vocational rehabilitation should in fact mirror the goals of prison officials as they attempt to rehabilitate prisoners and prepare them to lead productive lives once their sentences are complete. By ensuring that inmates have meaningful access to prison activities, such as disciplinary proceedings and counseling, the goals of both the institution and the Rehabilitation Act are served. *See Sites v. McKenzie*, 423 F.Supp. 1190, 1197 (N.D.W.Va. 1976) (mentally handicapped prisoner alleging exclusion from prison vocational rehabilitation program due to his handicap granted summary judgment under section 504).

Even though Bonner's claim is potentially cognizable under section 504, summary judgment for the defendants is appropriate if there are no genuine issues of material fact supporting his position. In order to prove a section 504 violation, Bonner must demonstrate: (1) that, as a deaf, blind and mute plaintiff, he is a handicapped person under the Rehabilitative Act; (2) that he is otherwise qualified; (3) that the relevant

program receives financial assistance; and (4) that the defendants' refusal to provide qualified interpreter services impermissibly discriminates against him on the basis of his physical handicaps. *See Greater Los Angeles Council on Deafness v. Zolin*, 812 F.2d 1103, 1107 (9th Cir.1987).

There is apparently no dispute regarding the first two elements that Bonner is both "handicapped" and "qualified." The Rehabilitation Act defines a handicapped individual as having "a physical or mental impairment which substantially limits one or more of such person's major life activities." 29 U.S.C. § 706(7)(B)(i). Department of Justice regulations define "major life activities" as "functions such as caring for one's self, performing manual tasks, walking, *seeing, hearing, speaking*, breathing, learning, and working." 28 C.F.R. § 42.540(k)(2)(ii) (emphasis added). To be "qualified" a handicapped person must meet "the essential eligibility requirements for the receipt of [program] services." 28 C.F.R. § 42.540(1)(2). As a prison inmate, Bonner is qualified (sometimes required) to participate in activities such as disciplinary proceedings, Honor Dorm Review Committee hearings, counseling, rehabilitation, medical services, and other prison activities.

 With regard to the third element, prison officials argue that summary judgment was appropriate because Bonner never alleged in his complaint that the prison or programs in question receive federal financial assistance. As Bonner points out, his complaint specifically cites and relies upon section 504 of the Rehabilitation Act and the Department of Justice regulations. Prison officials, therefore, were at least on notice that Bonner's complaint was based on the theory that the Arizona prison or its programs were subject to the requirements of section 504. *Pro se* complaints are held to a less strict standard than those drafted by a lawyer. *Akao v. Shimoda*, 832 F.2d 119, 120 (9th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1987). Although the fact should be pled, liberal interpretation of Bonner's *pro se* complaint encompasses an allegation of

federal financial assistance. Whether the prison or its programs receive federal financial assistance is a question of fact to be resolved in the district court.

Consideration of the fourth element, whether the prison official's refusal to provide qualified interpreter services impermissibly discriminated against Bonner, raises other genuine issues of material fact. Is Bonner able to communicate effectively without the use of a qualified interpreter? Prison officials claim adequate communication is achieved through use of the telecommunication device and inmate interpreters. If this is so, no discrimination could have occurred. Bonner, however, claims communication through either the telecommunication device or prison inmate interpreters is extremely difficult and inadequate. He claims his poor reading and writing skills prevent him from communicating his thoughts through writing or understanding others by reading their words via the telecommunication device. He claims the inmate interpreters are unskilled, and that he can understand them only 50% of the time.

Bonner claims that an inmate interpreter violated the confidentiality of his meetings with prison officials by leaking the nature of his crime to the general prison population. A leak of this type poses a significant security risk for Bonner. Both of Bonner's counselors claim that they would not have permitted an inmate interpreter to be present during conversations of a confidential nature where information could be leaked to the general prison population that would endanger Bonner's safety.

Bonner claims that inmate interpreters were provided by prison officials against his wishes, and that he submitted to their use only as a last resort in attempting to communicate with prison officials. Bonner's counselors claim that inmate interpreters were provided upon Bonner's specific request.

Bonner states that he specifically requested a qualified interpreter at a hearing before the Honor Dorm Review Committee to determine whether he would be permitted to remain in the honor dorm. Prison officials claim no such request was made.

Bonner alleges that he was given medical treatment without the assistance of an interpreter. A letter attached as an exhibit to Bonner's Complaint from a doctor who examined Bonner on September 10, 1982, supports the contention that lack of an interpreter impeded communication between the doctor and patient. The significance of this, if true, is a factual question.

Bonner claims he did not fully understand his right to appeal the Honor Dorm Review Committee recommendation that he be removed from the honor dorm, the meaning or significance of the waiver of protective custody which he signed, or the results of grievances that he filed. These allegations are also disputed by prison officials.

The ability of Bonner to raise a claim under section 504 and the presence of genuine issues of material fact preclude summary judgment on this issue. *See McElyea v. Babbitt*, 833 F.2d 196 (9th Cir.1987) (inmate raised genuine issue of material fact regarding claim that prison officials violated his religious freedom where inmate disputed affidavit of prison chaplain which stated that weekly Sabbath services were held and that inmate had never requested permission to participate).

### III.

### *Constitutional Claims*

Under the Civil Rights Act of 1871, 42 U.S.C. § 1983, Bonner asserts that prison officials have violated several of his constitutional rights, including due process and equal protection, as well as the eighth amendment's prohibition against cruel and unusual punishment, by denying him access to a qualified interpreter. Bonner appeals the district court's grant of summary judgment on these claims as well.

### A. *Due Process*

Bonner alleges that his constitutional right to due process was violated when he was denied a qualified interpreter before a meeting of the Honor Dorm Review Committee, as well as at other disciplinary hearings for altercations with prisoners. Bon-

ner has been removed from the Honor Dorm and is currently in protective lockdown.

Bonner argues that Ariz.Rev.Stat. Ann. § 12–242(B), which requires the provision of a qualified sign language interpreter for deaf individuals involved in any proceeding before a state department, creates a constitutionally protected liberty interest in the provision of an interpreter for administrative and disciplinary hearings in the prison. In *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Supreme Court found that a Pennsylvania statute created a liberty interest in remaining within the general prison population through the use of "mandatory language in connection with requiring specific substantive predicates" to the placement of prisoners in administrative segregation. *Id.* at 471–72, 103 S.Ct. at 871–72. However, state created "procedural requirements even if mandatory, do not raise a constitutionally cognizable liberty interest." *Toussaint v. McCarthy*, 801 F.2d 1080, 1094 (9th Cir.1986) (citing *Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983)). Although Ariz.Rev. Stat.Ann. § 12–242(B) contains mandatory language running to the benefit of Bonner, the provision of a sign language interpreter at a hearing is a procedural protection aimed at ensuring the fairness of the proceeding. Section 12–242(B), therefore, does not create a liberty interest.

However, Bonner may be able to claim a state created liberty interest in avoiding lockdown and remaining within the general prison population. *See Helms*, 459 U.S. at 471–72, 103 S.Ct. at 871–72. Where such a liberty interest is involved, due process requires prison officials to inform the prisoner of the charges against him and permit him to present his views. *McCarthy*, 801 F.2d at 1100. In *McFarland v. Cassady*, 779 F.2d 1426, 1428 (9th Cir.1986), we indicated that it is unlikely that Arizona statutes and regulations which provide for administrative lockdown of prisoners create a liberty interest in remaining within the general prison population, because they do not contain the mandatory language found

to be controlling in *Helms*, 459 U.S. at 471–72, 103 S.Ct. at 871–72. Based on the factual record, it is impossible to determine if the statutes and regulations referred to in *McFarland*, 779 F.2d at 1428, are the same as those used to place Bonner in protective lockdown, or if there is any other valid basis for distinguishing *McFarland*. Therefore, we remand this issue to the district court to determine if the statutes and regulations governing Bonner's placement in protective lockdown created a liberty interest.[1] If they do not, summary judgment on this issue is appropriate. If they do, a genuine issue of material fact exists regarding whether the denial of a qualified sign language interpreter prevented Bonner from understanding the charges against him or presenting his views. *See McCarthy*, 801 F.2d at 1100.

### B. *Equal Protection*

■ Bonner also argues that the prison officials' failure to provide him with interpreter services violated his right to equal protection. Handicapped individuals are not a suspect class. *California Ass'n of the Physically Handicapped v. F.C.C.*, 721 F.2d 667, 670 (9th Cir.1983), *cert. denied*, 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984). However, the Supreme Court has found that a government's disparate treatment of handicapped individuals will not always meet the rational relation test. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed. 2d 313 (1985) (Court uses rational relation test to strike down zoning ordinance requiring group home for mentally retarded to secure special use permit). Nevertheless, treating two groups differently does not necessarily violate the equal protection clause. In *California Ass'n of the Physically Handicapped*, 721 F.2d at 670, we held that the FCC did not violate the equal protection clause by excluding the handicapped from an EEO program designed to preclude discrimination against women and minorities. The court found that the FCC's justification based on cost was reasonable under the rational relation test. *Id.* Prison officials could raise the same justification regarding their use of a telecommunication device and inmate interpreters as opposed to a qualified sign language interpreters in trying to communicate with Bonner. Based on *California Ass'n of the Physically Handicapped*, 721 F.2d at 670, the prison officials' refusal to provide Bonner with a qualified interpreter is not a violation of the equal protection clause. Summary judgment on this claim was appropriate.

### C. *Cruel and Unusual Punishment*

■ Bonner claims that the failure to provide him with a qualified interpreter amounts to cruel and unusual punishment in violation of the eighth amendment. He alleges that he has been held "incommunicado almost constantly since being incarcerated." To support his claim, he relies on *Ruiz v. Estelle*, 503 F.Supp. 1265, 1345–46 (S.D.Tex.1980), *aff'd in part and vacated in part on other grounds*, 679 F.2d 1115 (5th Cir.1982), *amended in part and vacated in part on other grounds*, 688 F.2d 266 (5th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983), where the district court found that the failure of prison officials to make minor accommodations for physically and mentally handicapped inmates resulted in cruel and unusual punishment.

*Ruiz*, however, is distinguishable. In *Ruiz*, the lack of special accommodations for the handicapped often resulted in severe or painful medical and physical difficulties. *Id.* at 1340–43. The court found that where the refusal to make minor accommodations for the handicapped produced these types of results, the official's "constitutional duty [under the eighth amendment] to provide the inmates under their management with reasonably adequate food, clothing, shelter, sanitation,

---

1. The district court should also examine the statutes and regulations governing placement in and removal from the Honor Dorm. We recognize, however, that if Arizona did not create a liberty interest in remaining within the general prison population, as opposed to administrative lockdown, *see McFarland*, 779 F.2d at 1428, it is unlikely that the state created a liberty interest in remaining in the Honor Dorm.

medical care, and personal safety was breached." *Id.* at 1345 (citations omitted). Bonner has not alleged facts which would support a claim that the prison officials failure to provide him with a qualified interpreter produced results which breached this eighth amendment duty. Summary judgment on this claim, therefore, was appropriate.

## IV.

### DISMISSAL OF DIRECTOR LEWIS

■ The district court dismissed Samuel Lewis, the Director of the Arizona Department of Corrections, from this action based on *Monell v. New York Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which prohibits the application of *respondeat superior* to claims made under 42 U.S.C. § 1983. Bonner has alleged § 1983 claims based both on constitutional violations, as well as a statutory violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The district court's dismissal of Director Lewis regarding these § 1983 claims was correct.

■ However, Bonner may also claim injunctive relief and damages based solely on § 504 without the aid of § 1983. *See Greater Los Angeles Council on Deafness v. Zolin,* 812 F.2d 1103, 1107 (9th Cir.1987) ("We have recognized a private right of action under section 504, ... and plaintiffs suing under section 504 may pursue the full panoply of remedies, including equitable relief and monetary damages ..." (citations omitted)). The issue therefore, is whether the district court's dismissal of Director Lewis may properly encompass Bonner's independent claim under § 504.

In *Patton v. Dumpson,* 498 F.Supp. 933 (S.D.N.Y.1980), the district court engaged in a careful and extensive analysis of whether the doctrine of *respondeat superior* should apply to § 504 claims. In concluding that the doctrine should apply, the district court relied on three supporting arguments. First, the court noted that the regulatory scheme which implements § 504 relies heavily upon the idea of vicarious liability. *Patton,* 498 F.Supp. at 942. The

*Patton* court evaluated the regulations in effect at that time under the Department of Health, Education, and Welfare, but the same is true for current Department of Justice regulations. For example, if a program is in noncompliance with § 504, then the recipient of the federal aid (i.e. the agency under Director Lewis' guidance) is directed to remedy the situation, not the employee who actually perpetrated the violation. 28 C.F.R. § 42.504; *see Patton,* 498 F.Supp. at 942. Furthermore, the ultimate sanction for non-compliance, the elimination of federal funding, is also aimed at the recipient and not the employee. 28 C.F.R. § 42.530; 28 C.F.R. § 42.108; *see Patton,* 498 F.Supp. at 942.

Second, the district court examined the Supreme Court's decision in *Monell,* 436 U.S. 658, 98 S.Ct. 2018, regarding § 1983 claims, and concluded that it was inapplicable to claims based solely on § 504. *Patton,* 498 F.Supp. at 942. The district court noted that the *Monell* ruling was anchored largely upon the Supreme Court's determination that Congress did not intend to impose vicarious liability under the Civil Rights Act of 1871, 42 U.S.C. § 1983, based solely on the actions of a municipality's employee. The Supreme Court gleaned this intent from the specific wording of § 1983, as well as the act's legislative history. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. As such, it would be difficult to extend the ruling in *Monell* to § 504. Furthermore, as the *Patton* court noted, with the exception of § 1983, the general rule regarding actions under civil rights statutes is that *respondeat superior* applies. 498 F.Supp. at 942–43. The *Patton* court cited specific examples where the doctrine had been applied to private actions under Title VIII of the Fair Housing Act of 1968, 42 U.S.C. § 3612, Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–5, as well as 42 U.S.C. § 1981. *Patton,* 498 F.Supp. at 942–43.

The district court's third supporting argument was based on the policy behind § 504:

"The application of respondeat superior to § 504 suits would be entirely consist-

ent with the policy of that statute, which is to eliminate discrimination against the handicapped. The justification for imposing vicarious liability on employers for the acts of employees is well-known. It creates an incentive for the employer to exercise special care in the selection, instruction and supervision of his employees, thereby reducing the risks of accidents ... In the absence of a Congressional directive to the contrary, this court can assume only that Congress intended the judiciary to use every available tool to eliminate discrimination against the handicapped in federally funded programs...."

*Id.* at 943 (citations omitted).

We find the analysis of the *Patton* court persuasive, and hold that *respondeat superior* is applicable to claims based on § 504 which are brought independently of § 1983. *See also Conlon v. City of Long Beach*, 676 F.Supp. 1289, 1299 (E.D.N.Y.1987) (defendants' argument based on *Monell* could only apply to § 1983 claim which was based on a statutory violation of § 504, and not to claim made directly under § 504). The district court's dismissal of Director Lewis based on *Monell* was correct regarding Bonner's § 1983 claims. However, Bonner also has a cause of action based solely on § 504. Because *respondeat superior* applies to such claims, the district court's dismissal of Director Lewis with regard to the § 504 claim was error.

## V.

### CONCLUSION

The district court's grant of summary judgment regarding Bonner's equal protection and eighth amendment claims is affirmed. The district court's grant of summary judgment regarding Bonner's due process and § 504 claims is reversed. The district court's dismissal of defendant Lewis regarding Bonner's § 1983 claims is affirmed. The district court's dismissal of defendant Lewis regarding Bonner's independent § 504 claim is reversed. We remand in part for further proceedings consistent with the instructions herein. Each party shall bear his own costs and fees.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.