26 F.3d 132
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gary ST. HILAIRE, Plaintiff-Appellant,
v.
Sam LEWIS, Director; et al., Defendants-Appellees.
 No. 93-15129.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 24, 1994.*
Decided June 7, 1994.
 
 Before: HUG, D.W. NELSON, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Gary St. Hilaire, an Arizona state prisoner, appeals pro se the district court's grant of summary judgment in favor of the defendants. St. Hilaire alleged, in his 42 U.S.C. Sec. 1983 action, that the defendants violated his civil rights by: (1) using money from an "Activities and Recreation Fund" to purchase books for the prison law library; (2) transferring him to a lockdown unit; (3) calling him names; (4) denying his request for an HIV test; and (5) withholding his legal research. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 
 3
 "A grant of summary judgment is reviewed de novo to determine, viewing the evidence in the light most favorable to the nonmoving party, whether there exist any genuine issue of material fact and whether the district court correctly applied the relevant substantive law." Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709, 712 (9th Cir.1990).
 
 Activities and Recreation Fund
 
 4
 St. Hilaire contends that because he has a property interest in the Activities and Recreation Fund, the defendants' use of money from the fund to purchase books for the law library, without his consent, is unconstitutional. St. Hilaire further contends that by using funds from the Activities and Recreation Fund the defendants are making the prisoners pay for their own law books, in violation of Bounds v. Smith, 430 U.S. 817 (1977). These contentions lack merit.
 
 
 5
 "The due process guarantees of the Fifth and Fourteenth Amendments apply only when a constitutionally protected liberty interest or property interest is at stake." Tellis v. Godinez, 5 F.3d 1314, 1316 (9th Cir.1993) (citing Board of Regents v. Roth, 408 U.S. 564, 569 (1972)). "Property interest are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source, such as state law." Roth, 408 U.S. at 577; accord Tellis, 5 F.3d at 1316.
 
 
 6
 We agree with St. Hilaire that he has a protected property interest in the funds in his own prison account. See Quick v. Jones, 754 F.2d 1521, 1523 (9th Cir.1985) (holding that prisoners have a protected property interest in their own accounts). We, however, conclude that he does not have a protected property right in the Activities and Recreation Fund.
 
 
 7
 Arizona state law does not create a property interest in the Activities and Recreation Fund. Rather, Arizona statutes and regulation expressly authorize prison officials to establish and maintain an inmate store and to deposit profits in the special services fund.[1] Ariz.Rev.Stat.Ann. Sec. 41-1604.02. Monies from the special services fund "may be used for the benefit, education and welfare of such offenders." Ariz.Rev.Stat.Ann. Sec. 41-1604.03(B). Thus, St. Hilaire does not have a protected interest in the account. See Tellis, 5 F.3d at 1317 (noting that Nevada state statute expressly authorizes prison officials to use money in special account for the benefit of all prisoners). Therefore, prison officials could purchase books for the law library with monies from the fund. Cf. id. Moreover, because the use of monies to purchase law books was proper, the defendants have not violated the affirmative mandate of Bounds. Accordingly, the district court properly granted summary judgment in favor of the defendants on this claim. See Nishimoto, 903 F.2d at 712.
 
 Unit Transfer
 
 8
 St. Hilaire contends that he had a protected liberty interest in remaining in the general prison population, and that the defendants deprived him of that right by transferring him to a lockdown unit. St. Hilaire argues that state regulations create the protected liberty interest. This contention lacks merit.
 
 
 9
 The Due Process Clause does not create a liberty interest in remaining in the general population of a prison. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). State statutes or regulations may, however, create a protected liberty interest in remaining in the general population. Id. at 470-72. In order to create such an interest, the statute or regulation must "establish 'substantial predicates' to govern official decisionmaking and [mandate] the outcome reached upon a finding that the relevant criteria have been met." Mendoza v. Blodgett, 960 F.2d 1425, 1428 (9th Cir.1992) (quoting Kentucky Dep't Corrections v. Thompson, 490 U.S. 454, 462 (1989)), cert. denied, 113 S.Ct. 1005, 1027 (1993). Therefore, "if a decisionmaker can make his decision for any constitutionally permissible reason or for no reason at all, the state has not created a liberty interest." Id. (citing Olim v. Wakinekona, 461 U.S. 238, 249 (1983)).
 
 
 10
 Here, St. Hilaire was transferred to the Tucson institution from the Douglas institution. In their motion for summary judgment, the defendants proffered the affidavits which establish the following facts. Upon his arrival in the Tucson institution, two prison officials interviewed St. Hilaire. The officials questioned St. Hilaire about his conduct at the Douglas institution. Specifically, the officials questioned St. Hilaire about a letter he authored in which he threatened to start a "race war" in the Tucson institution. During the interview, St. Hilaire was hostile and uncooperative. Pursuant to prison policies, the officials placed St. Hilaire in a detention unit "to insure the safe, secure and orderly operation of a prison facility."
 
 
 11
 St. Hilaire argues that Arizona Department of Corrections Internal Management Policy 302.14 confers a state-created liberty interest in remaining in the general population. We disagree. We acknowledge that Policy 302.14 states that "Wardens and Deputy Wardens shall make detention placements in accordance with the guidelines set forth in section 5.1.1 through 5.1.5." We conclude that the use of the word "shall" does not sufficiently limit the warden's discretion. Indeed, section 5.1.5 clearly states that a prisoner may be placed in detention "to ensure the safe, secure and orderly operation of a prison or facility." Because prison officials have historically been entrusted with the safe and efficient operation of a prison, see e.g., Hewitt, 459 U.S. at 470, prison officials, pursuant to section 5.1.5, have discretion to make detention decisions for any reason to secure and ensure institutional safety, see Olim, 461 U.S. at 249; Mendoza, 960 F.2d at 1428. Therefore, we conclude that the State of Arizona did not intend to create a liberty interest in staying in the general population. Because St. Hilaire did not have a state-created liberty interest in staying in the general prison population, we need not decide if he was afforded the required "due process."[2] Accordingly, the district court properly granted summary judgment in favor of the defendants on this claim. See Nishimoto, 903 F.2d at 712.
 
 Name Calling
 
 12
 To the extent that St. Hilaire contends that certain defendants violated his constitutional rights by calling him a "racist" and a "Nazi," we conclude that St. Hilaire has not stated a claim for relief. A prisoner's claim that a prison official or guard verbally harassed or abused him does not state a constitutional deprivation. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir.1987). Thus, St. Hilaire's allegation, without more, fails to state constitutional deprivation. See id. Therefore, the district court properly granted summary judgment in favor of the defendants on this claim. See Nishimoto, 903 F.2d at 712.
 
 HIV Test
 
 13
 St. Hilaire contends that the defendants' refusal to give him a blood test for HIV violated the Eighth Amendment. This contention lacks merit.
 
 
 14
 To state an arguable section 1983 claim for failure to provide medical care, the prisoner must allege that the defendants' "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); accord Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir.1986), cert. denied, 481 U.S. 1069 (1987).
 
 
 15
 There is no dispute that St. Hilaire requested an HIV test and that the defendants refused to administer the test. Moreover, St. Hilaire concedes that he is not a member of one of the traditional "high risk" groups for contracting HIV. Nonetheless, St. Hilaire argues that he has a right to an HIV test upon request "[d]ue to the over representation of IV drug abusers in prison; the communal sharing of bathrooms, athletic and recreational equipment/activities; and the 'frequent' blood spills, cuts and scrapes."
 
 
 16
 We conclude that because St. Hilaire conceded that he is not a member of a high risk group for contracting HIV and because he has not alleged that he was actually exposed to the HIV virus, he has not demonstrated that he had a serious medical need. See Gamble, 429 U.S. at 106; Toussaint, 801 F.2d at 1111. Therefore, the district court properly granted summary judgment in favor of the defendants on this claim. See Nishimoto, 903 F.2d at 712.
 
 Withholding Legal Research
 
 17
 St. Hilaire contends that the defendants violated his right to access the courts by withholding legal research. This contention lacks merit.
 
 
 18
 Prison officials are constitutionally required to provide inmates either access to adequate law libraries or adequate assistance from persons trained in the law. Bounds v. Smith, 430 U.S. 817, 828 (1977). If an inmate does not claim a denial of access to adequate law libraries or legal assistance, he must show an actual injury: a specific instance in which he was actually denied access to the courts. Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir.1989).
 
 
 19
 St. Hilaire received two boxes containing legal research regarding HIV and AIDS. Defendants apparently withheld the mail to determine whether it was contraband. St. Hilaire argues that the material was withheld for two months. St. Hilaire contends that he needed the material to petition for certiorari with the United States Supreme Court. St. Hilaire concedes that the material "would [not] have swayed the Supreme Court to grant certiorari." Therefore, we conclude that he has not demonstrated that he suffered an actual injury and, therefore, was not denied access to the courts. See id.
 
 
 20
 To the extent that St. Hilaire argues that he had a state-created liberty interest in receiving his mail according to a state promulgated policy, we disagree. Even if St. Hilaire had a protected property right in his mail, the state-created policy setting forth certain procedures for handling mail, even if mandatory, create no cognizable liberty interests. See Olim, 461 U.S. at 250-51; Bonner v. Lewis, 857 F.2d 559, 564 (9th Cir.1988). Accordingly, the district court properly granted summary judgment in favor of the defendants on this claim. See Nishimoto, 903 F.2d at 712.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Activities and Recreation Fund is a special services account which contains monies held in trust for the benefit, education, and welfare of inmates
 
 
 [2]
 To the extent that St. Hilaire contends that Arizona Department of Corrections Internal Management Policy 302.14 confers a state-created liberty interest in certain procedural requirements, we conclude that state due process requirements, even if mandatory, create no cognizable liberty interests. See Olim, 461 U.S. at 250-51; Bonner v. Lewis, 857 F.2d 559, 564 (9th Cir.1988)